### BAILEY v. SANDERS.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

#### No. 1,684.

1. PUBLIC LANDS (§ 109*)—CANCELLATION OF ENTRY—POWER OF COURTS TO REVIEW.

   To give a Circuit Court jurisdiction to review the action of the Land Department in canceling an entry of public land, it must first appear from the bill that the complainant has at least an equitable claim to the land.

   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 307; Dec. Dig. § 109.*]

2. PUBLIC LANDS (§ 109*)—CANCELLATION OF ENTRY—SUIT TO SET ASIDE DECISION.

   Where a homestead settler on ceded lands of the Nez Perce Indian reservation required to pay a stated price per acre by Act Aug. 15, 1894, c. 290, 28 Stat. 326, and entitled to commute under Rev. St. § 2301, as extended by Act Jan. 26, 1901, c. 180, 31 Stat. 740 (U. S. Comp. St. 1901, p. 1620), commuted but paid only the minimum price of $1.25 per acre, which was less than the price required by the plain provision of the statute, and neither he nor a grantee, whose deed was not recorded and who had not taken possession, although notified of the suspension of his entry, tendered further payment until several months after his entry had been canceled and a new entry accepted on a relinquishment filed by him, a bill by the grantee to recover the land from the new entryman *held* to show no equity which gave a court jurisdiction to review the action of the Land Department.

   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 307; Dec. Dig. § 109.*]

Appeal from the Circuit Court of the United States for the Northern Division of the District of Idaho.

Suit in equity by Douglas W. Bailey against Arthur Sanders. Decree for defendant, and complainant appeals. Affirmed.

This action was brought on the 26th day of January, 1907, in the Circuit Court of the United States for the Northern District of Idaho, by Douglas W. Bailey, appellant, a citizen of the state of Oregon, against Arthur Sanders, appellee, a citizen of the state of Idaho, to quiet and confirm the complainant in his alleged right to certain public land of the United States within the limits of the ceded portion of the Nez Perce Indian reservation in Idaho county, state of Idaho. The subdivisions described comprise 160 acres of public land.

The bill prayed that the complainant be decreed to be entitled to the possession thereof; that the defendant be enjoined to desist from claiming any title to or interest in said real property, and from committing any waste thereon,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and from interfering with complainant's possession of said premises; that the defendant be required to make and render a full and complete account to complainant for the value of the rents, issues, and profits of said premises since April 18, 1902; and that a judgment be rendered in favor of complainant and against defendant for the amount found due.

The bill of complaint alleged that on the 1st day of May, 1899, the land in controversy was unoccupied and unimproved vacant public land of the United States, situated within the ceded portion of the Nez Perce reservation in Idaho county, state of Idaho, and as such was subject to settlement and entry under the homestead laws of the United States; that on May 1, 1899, one William W. Hately made application at the United States Land Office, at Lewiston, Idaho, to enter said land as a homestead; that he thereupon made before the register and receiver of said Land Office the usual and customary application required under the provision of section 2290 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1389), and paid the fees and commissions therein prescribed, and received his certificate therefor; that Hately thereupon entered upon the possession of said land and constructed a dwelling house thereon, and began to reside, and continued to reside, thereon with his family and to improve and cultivate said land until about the 24th day of April, 1901; that on the 24th day of January, 1901, desiring to avail himself of the benefits, privileges, and rights under the provision of section 2301 of the Revised Statutes of the United States, as amended by Act Cong. March 3, 1891, c. 561, § 6, 26 Stat. 1098 (U. S. Comp. St. 1901, p. 1406), and Act May 17, 1900, c. 479, 31 Stat. 179 (U. S. Comp. St. 1901, p. 1618), he filed in the Land Office of the United States in Lewiston, Idaho, his notice of intention and desire to make final proof of his residence upon and improvement and cultivation of said tract of land and pay the minimum price therefor as prescribed in said act of March 3, 1891, and said act of May 17, 1900; that on the 9th day of March, 1901, said Hately appeared before the United States commissioner and submitted his proof of such residence upon and improvement and cultivation of said tract of land, and paid to the register and receiver of said Land Office "the sum asked" for said land under the said laws of the United States, to wit, the sum of $200 ($1.25 per acre for 160 acres), and in pursuance thereof said register and receiver on the 29th day of March, 1901, issued to said Hately their final certificate thereof and receipt therefor; that on the 2d day of April, 1901, said Hately and his wife made, executed, and delivered to one R. C. Beach their warranty deed, whereby, in consideration of the sum of $800 to them paid by said Beach, they, the said Hately and wife, granted, bargained, sold, and conveyed unto the said Beach the said land; that in April, 1901, the Commissioner of the General Land Office suspended said entry of Hately for the reason that under the act of Congress of January 26, 1901, providing for commuting homestead entries within the limits of ceded Indian reservations, said Hately was required to pay for his land the sum of $3.75 per acre, or the additional sum of $406; that said Beach, as the grantee of Hately, caused an appeal to be taken from said order, and upon said appeal the Secretary of the Interior affirmed said order of the commissioner, and thereafter on October 31, 1902, said Beach, as the grantee of Hately, made a tender of said sum of money to the register and receiver of the Land Office at Lewiston, Idaho, and said register and receiver refused to accept the same; that prior thereto, and on January 30, 1902, Hately made a relinquishment of said land to the United States, whereby he sought and attempted to restore said land to the public domain of the United States, and thereupon the defendant, Arthur Sanders, sought to enter the land as a homestead and presented his application and affidavit therefor with the relinquishment to the said land on the 31st day of January, 1902. It appears that on June 10, 1903, Beach conveyed his interest in the land to the complainant herein, who had appeared as attorney for Beach in the proceedings before the Land Office.

The bill of complaint recites the proceedings in the General Land Office in the matter of the application of Arthur Sanders to enter the land formerly embraced in the Hately homestead entry, wherein R. C. Beach was the transferee. It appears from the complaint, and such recitals and the exhibits attached to the bill of complaint and made a part thereof, that Hately moved from said land in April, 1901, and took up his residence in Moscow, Idaho; that on No-

vember 7, 1901, he was officially notified by the Land Department to make an additional payment of $406 in payment for the land, which he refused to do; that the defendant, Sanders, moved upon the land on the 18th day of April, 1902; that Beach was a dry goods merchant residing and doing business in Lewiston, Idaho, about 70 miles distant from the land in controversy; that Beach learned soon after the issuance of the final certificate by the register and receiver on March 9, 1901, that the price of the land was $3.75 per acre, but he failed to bring his claim to the attention of the officers of the Land Department until after Hately had filed his relinquishment in the Land Office on the 30th day of January, 1902.

There was a hearing before the register and receiver of the Land Office at Lewiston ordered by the Commissioner of the General Land Office "in order that all the facts in the case might be brought out." The hearing resulted in a recommendation by the register and receiver to the Commissioner of the General Land Office that Hately's homestead entry and cash certificate be canceled, and that Arthur Sanders be allowed to file a homestead entry to the land. This recommendation was approved, and the Commissioner of the General Land Office ordered "that the homestead entry and the commuted cash entry will be canceled on his relinquishment, and Sanders will be allowed to enter the land." Beach appealed from this order to the Secretary of the Interior. In the opinion of the Secretary of the Interior passing upon this appeal. the evidence before the Land Office is reviewed, and the Secretary of the Interior found that:

"Beach has never paid Hately any consideration, has never assumed control of the land, and has expressly disclaimed any interest therein, both to the local officers and to the original entryman who executed the alleged conveyance to him.

"On the other hand, it appears from the evidence: (1) That in January, 1901. two months before the commutation proof was offered, Bailey induced Hately to enter into a verbal agreement, of which a memorandum was written and explained to him by Bailey, to make commutation proof in the interest of some other person, and make the cash payment with money furnished by Bailey, and thereupon to execute a deed to said land as directed by Bailey and received $600 as the consideration therefor; (2) that in pursuance of this agreement Bailey had Hately submit his proof on March 9, 1901, which Bailey obtained from the officer taking the same, and a few days later delivered to the local officers, and that, after an interval of two weeks, Bailey obtained the money from Beach, and on March 29, 1901, made the cash payment then required; (3) that on April 2, 1901. Bailey had Hately execute a deed to the said land according to their said agreement, naming Beach as the grantee therein, presumably to secure the latter for $200 advanced; (4) that, in payment of the consideration agreed upon in January, Bailey gave Hately said sight draft on Beach; (5) that Bailey for one year and nearly three months held and then filed for record the said deed, and four months later made said tender to the local officers, and three months thereafter made said tender to Hately."

The Bailey here referred to is the complainant herein.

It was further found that:

"The evidence compels the conclusion that Beach is and was not the real party in interest, and that the sale of this land by Hately was agreed upon in advance of final proof thereon, and that it was commuted according to that agreement, Hately delivering the deed, and accepting, and presenting for payment, the said sight draft. The entering into such forbidden agreement ended the right of the entryman to make proof and payment and rendered him incompetent to further proceed with his entry. He could not thereafter submit a proof upon which he could convey a valid title and could not take oath of nonalienation required with said additional payments. It ended the contract between Hately and the United States, initiated by his filing and entry, and upon which alone it could be maintained. The land was from that time forward open to settlement and entry by the first legal applicant, although it yet remained to cancel his entry of record whenever the fact of such illegal contract should become known and established.

"It followed that Beach took nothing by said deed, Hately has forfeited his claim, and that Sanders has the right to make entry for the land."

To this bill of complaint a demurrer was interposed upon the grounds, among others: (1) That it appears by the plaintiff's own showing by the said bill that he is not entitled to the relief prayed for by said bill against the defendant; (2) that it appears from said bill of complaint that the court has no jurisdiction to hear or determine the action. The court sustained the demurrer and afterwards dismissed the bill of complaint.

Douglas W. Bailey, for appellant.

James H. Forney and Frank L. Moore, for appellee.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

MORROW, Circuit Judge (after stating the facts as above). The first question to be determined is whether the bill of complaint shows such equity in the complainant as to entitle him to a review of the action of the Land Department with respect to the land in controversy. To give the Circuit Court jurisdiction to review the action of the Land Department upon allegations of the character contained in this bill, it must first appear from the bill of complaint that the complainant has at least an equitable claim to the land in question. What are the facts alleged with respect to this claim? They are that one Hately, on the 24th day of January, 1901, desiring to avail himself of the benefits, privileges, and rights under the provisions of section 2301 of the Revised Statutes of the United States, as amended by act of Congress of March 3, 1891, and the act of May 17, 1900, filed in the Land Office of the United States at Lewiston, Idaho, his notice of intention and desire to make final proof of his residence upon and improvement and cultivation of said tract of land and pay the minimum price therefor as prescribed in said act of March 3, 1891, and said act of March 17, 1900; that on the 9th day of March, 1901, said Hately appeared before the United States commissioner and submitted his proof of residence upon and improvement and cultivation of said tract of land and paid to the register and receiver of said Land Office "the sum asked for said land," to wit, the sum of $200, or $1.25 per acre for 160 acres contained in the tract.

Section 2301 of the Revised Statutes as amended provides as follows:

"Nothing in this chapter shall be so construed as to prevent any person who shall hereafter avail himself of the benefits of section twenty-two hundred and eighty-nine from paying the minimum price for the quantity of land so entered at any time after the expiration of fourteen calendar months from the date of such entry, and obtaining a patent therefor, upon making proof of settlement and of residence and cultivation for such period of fourteen months, and the provision of this section shall apply to lands on the ceded portion of the Sioux reservation by act approved March second, eighteen hundred and eighty-nine in South Dakota and in the state of Nebraska, but shall not relieve said settlers from any payments now required by law."

But with respect to lands embraced within the limits of the ceded portion of the Nez Perce Indian reservation section 16 of the act of Congress of August 15, 1894 (28 Stat. 326, 332, c. 290), provided that the lands ceded and conveyed to the United States should be open to settlement by the proclamation of the President, and should be subject to disposal only under the homestead, town-site, stone and

timber, and mining laws of the United States, except the sixteenth and thirty-sixth sections, which were reserved for common school purposes. It was further provided that each settler on said land should, before making final proof and receiving a certificate of entry, pay to the United States for the land so taken by him in addition to the fees provided by law the sum of $3.75 per acre for agricultural lands, one-half of which should be paid within three years from the date of the original entry. By proclamation of the President of the United States these lands were opened to settlement at noon on the 18th day of November, 1895 (29 Stat. 873, 875).

The act of January 26, 1901 (31 Stat. 740, c. 180 [U. S. Comp. St. 1901, p. 1620]), provided:

"That the provisions of section twenty-three hundred and one of the Revised Statutes of the United States, as amended, allowing homestead settlers to commute their homestead entries be, and the same hereby are, extended to all homestead settlers affected by or entitled to the benefits of the provisions of the act entitled 'An act providing for free homesteads on the public lands for actual and bona fide settlers, and reserving the public lands for that purpose,' approved the seventeenth day of May, Anno Domini nineteen hundred: Provided, however, that in commuting such entries the entryman shall pay the price provided in the law under which original entry was made."

The original entry in this case was made under the act of August 15, 1894, which fixed the price of agricultural land within the ceded portion of the Nez Perce Indian reservation at $3.75 per acre.

Hately, in an affidavit dated January 30, 1902, attached to the complaint and made a part thereof, says:

"That at the time that he made said entry and at the time offering proof for commutation of the same he was informed and believed that the land was minimum land and could be commuted at the rate of $1.25 per acre; but since that time he has been informed that said land is within the Nez Perce Indian reservation, and cannot be commuted at the rate of $1.25 per acre, but must be commuted at the rate of $3.75 per acre."

It seems extraordinary that a settler could go upon public land in the vicinity of an Indian reservation and make a homestead entry within the recently ceded portion of such reservation without knowing that the land had been a portion of the reservation. Such a statement at least excites suspicion. But when was Hately informed that the land could only be commuted at the rate of $3.75 per acre? It is stated in the bill that on April 2, 1901, Hately conveyed the land by deed to Beach in consideration of the sum of $800, and we are informed by the affidavit of the complainant herein, also attached to the complaint and made a part thereof, that for this deed Hately was paid by the complainant, as attorney for Beach, the sum of $200 in cash and given a sight draft on Beach for the sum of $600; that this draft was not paid by Beach because he had been advised that the homestead entry could not be approved. There is an unsworn statement by Hately in the proceedings before the Land Office in which he says:

"That some weeks after said Bailey gave me said sight draft on Beach, I sent the same to Lewiston through the bank, and as I am informed the same was presented to Beach and payment thereof was declined, and said Beach advised me that he had held up the payment of said draft on account of an

order of the Commissioner of the General Land Office requiring an additional payment.

"That as I am also informed, prior to the presentation of said draft the Commissioner of the General Land Office made an order suspending said entry and requiring that $3.75 per acre be paid for commutation of said entry, instead of $1.25 per acre, and that said Beach had received that information before the draft was presented and did not pay the draft on that account."

This statement is fully corroborated by the acts and statements of the parties as they appear in the record. It further appears that on November 7, 1901, the officers of the Land Department officially notified Hately that he was required to make an additional payment of $406, or the full price of $3.75 per acre in payment of the land. Did the parties in interest, either Hately, Beach, or the complainant, promptly pay or tender the amount required to make full payment for the land as required by law? It was not until October 31, 1902, that Beach, the grantee of Hately, by the complainant as his attorney, tendered to the register and receiver the sum of $406 in full payment for the land. In Hately's affidavit dated January 30, 1902, he says:

"Affiant does not intend to pay the balance of $400 and commissions necessary, but intends to relinquish said entry, as he is not able to pay the balance due under the same."

The tender was made a year and a half after Hately had sold or attempted to sell the land to Beach; nearly a year after Hately had been officially notified to make the additional payment of $406; nine months after Hately had notified the Land Office that he would not pay the balance, but would relinquish the entry; and six months after the land had been settled upon and entered as a homestead by Sanders and his homestead rights had attached. If the parties seeking to obtain this land under Hately's commuted homestead entry were acting in good faith, why did they not after being advised promptly tender the full amount required by law to purchase the land? The law was perfectly clear that the price of the land was $3.75 per acre, and an appeal to the Secretary of the Interior upon such a question did not justify the parties in delaying a year and a half in making the tender after having knowledge of the law and a year after having received official notice from the Land Department. Furthermore, this tender has not been made good in this action. There is no offer in this case to pay to the United States the full amount required to obtain the land as a commuted homestead entry. The allegations of the bill do not show good faith in the proceedings before the Land Department on the part of the complainant and those from whom he has derived his title; on the contrary, the inference to be drawn from the facts stated is that there was an effort on the part of Hately and the complainant, acting as the attorney for Beach, to obtain this land for a sum less than and under conditions other than those provided by law.

The complainant failing to show in his bill that he has an equitable claim to the land in controversy, the bill was properly dismissed.

The decree of the court below dismissing the bill is therefore affirmed.